The first case on the docket is case number 5-19-0018, Ramon v. Hendricks, counsel for the appellant. You may proceed. May it please the court. My name is Jillian Wood. I'm here on behalf of the petitioner appellant, Jose Ramon. Your Honor, this case is about how, in this particular instance, the court misapplied the law as it relates to decision-making and parenting time as it deals to an allocation judgment, an original allocation judgment. And that's a really important factor that I want to focus on today. The way that the court misapplied the law in this case is that it restricted Jose's decision-making and parenting time without making the necessary finding that Jose had endangered by his conduct, the minor child's physical, mental, moral, or significantly impaired the minor child's emotional development. So why is that, in your opinion, necessary, since it was a temporary order? I'm talking about the allocation judgment, Your Honor. The actual allocation judgment restricted when the – The actual allocation was a temporary order that doesn't set any kind of standard that can be either limited or accelerated as far as the statute goes. Would you agree with that? I would agree with that. Okay. The issue that we have here, Your Honor, is that when the court issued its judgment, it basically – it allocated no parenting responsibilities at all to Mr. Ramon. By the agreed order they had, they did have – there was an instance where he was given and they agreed to share decision-making around the minor child's school. But that was more in the nature of a temporary order. And that is correct. But in terms of the final allocation judgment, the court awarded no parenting responsibilities to Mr. Ramon. So in other words, there was a restriction in that he was not given or awarded any of those – any of those benefits, according to, you know, the – making decisions about the minor child's health, education, religion, extracurricular activities. Yes. It's your opinion that the court has to show that there was a danger in doing that and not doing it? Yes. That according to – if you look at Section 606 – I believe it's 602.5, Your Honor, in terms of the decision-making factors, there are 15 factors that are listed there. And one of those factors is whether a restriction on decision-making is appropriate under 603.10. 603.10 says that orders may include reduction, elimination, or other adjustments of parents' decision-making or time, or both. And in this instance, in terms of decision-making on parenting time, the court restricted Mr. Ramon's parental decision-making completely. There was no decision-making that was awarded to him. So your reading of that section, then, would require the court, unless there was absolutely equality in everything, that there be a finding that any kind of difference in the allocation is a danger to the child? No. What I would say, Your Honors, is that when you don't – when you don't award any allocation of decision-making to a parent, yes, there is a – an understanding and sort of a precedent that's set in the passage of the new statutes where we do want to involve parents. We want parents involved in the decision-making regarding their children. We don't want to restrict parents' access, children's access. Parents need to be involved. All of these things are articulated not only in the purpose and rules of construction under the statute under Section 102, but in terms of parentage cases, under 46-102, the public policy that was articulated in that was very, very important in terms of the passage of the Illinois Parentage Act in 2015. That act basically said that Illinois is recognizing the right of every child to the physical, mental, emotional, and financial support of his or her parents, and the parent-child relationship, including support obligations, extends equally to every child and to his or her parent or to each of his or her two parents, regardless of that legal relationship with parents and regardless of whether or not the parent is a minor. So we start from this premise that we do, and we're recognizing that parents in parentage cases are now being placed on the same level with parents and traditionally married – married families. A lot of this comes from NRAJW, which is where we have this distinction by the Illinois Supreme Court that we don't apply the restriction of parentage time – of parenting time to a parent that is not a – that is not a married parent. Leaving that aside, and I agree with you, I don't understand where you're coming up with this. If the court decides in a particular case that parties cannot make joint decisions because of their inability to have a constructive relationship, and that may either be jointly or one of the parties is causing the primary problem, I don't understand how you say that that is a restriction that requires a finding that would be dangerous to the child. Well, Your Honor, if – in looking at 602.5, when we look at these decision-making factors – and it does. There's – there are 15 different factors that were – that we need to look at. But part of that in – in one of those factors is whether or not this restriction is appropriate or not. And the court's judgment is devoid of any finding as to why Mr. Ramone would not have been awarded one of these parent decision-making responsibilities. But he had one under the agreed order, and I would agree with Your Honor that that doesn't necessarily mean that that then triggers some type of change. But it is a curious and strange thing to have an agreed order where you have two parents who have agreed we're going to share at least this decision-making on this educational piece, and then for some reason in the judgment that we just don't award any of those decision-making responsibilities to another parent. Well, it seems to me, though, that there was quite a bit of testimony from the GAL and from other sources that would have supported the – the opinion that these parties could not make joint decisions. I think it's difficult to know because we don't necessarily have the – the record of what was – what was testified to at this trial. But the way that 602.5 reads is if you're – if you're going to not award a parent any decision-making responsibilities, the statutes then guide us then to another – another place, which talks about, you know, a parent who is not awarded significant parenting responsibilities also should be awarded reasonable parenting time. Can I ask you – you talk about there not being a record to support that. Whose responsibility is that? That is the responsibility of the appellant, Your Honor. Yes. And so you're here complaining about it, but you didn't supply a bystander report either. Well, we attempted to provide a bystander report. Unfortunately, we were not able to secure the – the cooperation of – And what are you then entitled to do if you can't cooperate on getting a bystander report? There's also a – a next step. Is that correct? That is correct. And you didn't take – you're fined for not taking that next step. In terms of the next step, well, we did appeal to this court to try to get – you know, secure that bystander report. No, you've been filing your own report. We – unfortunately, the way that we understood the statute and the way that the statute was rated, that we would not have the ability to just proffer a report that was not certified by the circuit court – was our understanding of how the rule applies. But getting back to our issue on this decision-making factors, I do believe in terms of the statute and the way that the statute is written and looking at the way that the public policy is enacted in terms of the Parentage Act, that if not giving any parent any type of parenting responsibilities is a restriction. When we look at what restriction of parenting responsibilities means, it says orders may include reduction, elimination, or other adjustment of a parent's decision-making time, or both. And when you're not giving anything to a parent, it is the responsibility in – according to how we view the statute and the way that these statutes have been constructed, that the court does need to make a finding as to why, based on the preponderance of the evidence, we're going to restrict this parent's decision-making responsibilities. Otherwise, you have to look, too, as well, to the Parenting Time Statute, which basically says that there's a presumption that both parents are fit. And if both parents are fit, the court cannot and shall not place any restriction on parenting time, as it's defined by Section 600. And so you also are arguing that there was a restriction placed on parenting time. There was a restriction placed on parenting time. And that's based on saying that it's not a 50-50 allocation, because it seemed like there was quite a bit of allocation of parenting time to your client. There was an agreed order that allocated a lot of parenting time, and I think that is another sort of question that the trial court did not explain in its judgment in terms of taking time away from the parent. Now, once again, you're talking about a temporary order and then saying that that's a reduction. And I thought that you agreed with me that temporary orders were not something that you could then argue a reduction from. I agree, Your Honor, and that's not what I'm suggesting here. What I'm suggesting here, though, is that when you get to a point, and we're talking about public policy and we talk about the legislative intent of the 2015 Parentage Act, we talk about making sure that we're getting parents more time, that we're putting parents on equivalent playing fields with one another. And when you get to a judgment that basically says to a parent, a dad, this statute was specifically amended to try to get parents and dads more time, when you get to a point where you give a dad every other weekend and that's all that you give him, that is a restriction of his time, parenting time. I would say that we have been somewhat limited in our ability to understand this case because there is no transcript and there is no bystanders report. But what there is is a very lengthy report by the GAL, and that doesn't speak very well of your client's ability to work with the mother in this case to make joint decisions. Do you agree with that? I would agree that the way that the guardian ad litem's report would read that way. However, I think there are some very significant problems with the guardian ad litem's report in terms of the very, very, very, I think, blatant and very forward bias that's in there, and then the latent bias. What you see is the matter of credibility that the judge determined. It's a matter of the question is whether or not if the court placed a heavy, heavy weight on a guardian ad litem's recommendations, and based on her report and what we've argued in our brief, those findings, the things that the guardian ad litem says, these things are not based on facts within the guardian ad litem's report that you see them. Often what you see are conclusive restatements about Mr. Ramone or conclusive restatements about whether or not he had control, whether or not he genuinely cares for his child, or this is more about control. These are all conclusive restatements where the guardian ad litem doesn't cite specific evidence. You know, as an example, she said he can't get along with anybody. This is only based off of her communications with the mother and the attorney that represented the subdivision for the issue that Mr. Ramone had with the subdivision. In terms of other things, the guardian ad litem also paints Mr. Ramone as, you know, someone who is difficult, not able to work with, but then doesn't give, I think, equal credence to the things that mom says about Mr. Ramone. That really calls into question, I think, her, where she is at in terms of this, that she says to the guardian ad litem, he doesn't love his daughter, you know, but the guardian ad litem doesn't take what mom says and applies the same type of credibility. I don't, as I recall, I think both the GAL and the court made statements about the fact that your client was a very devoted father. I don't think there was any question about his love for his daughter. Well, I think the issue, though, Your Honor, is that what the guardian ad litem did in terms of her recommendations, though, she took a lot of these things, a lot of the allegations that mom said. What you see in this report is that what the guardian ad litem does is tries to find and basically do things to support what mom has to say about this. And in her recommendations, what you do see is this language about restriction. She believes that there was supposed to be some type of restriction, but you don't see in her report the necessary findings or the necessary information that would show that this child has been in some way endangered by Mr. Ramone, either by his, you know, emotional, physical, you know, mental, you know, non-support of this child, or it puts her emotional stability in limbo in any way, shape, or form. None of those types. You see in this report and in this case, this is a very similar case where you see a lot of things that go back and forth where mom and dad say a lot of things about one another. But what you see in this guardian ad litem report is you see that mom, the things that mom says, we seek to find and validate the things that mom says and minimize the things that dad raises concerns about. Neither one of these parents raised, I would say, a very serious concern in terms of the health, safety, welfare of this minor child. What you see underlying this report is that you do have a very healthy child. A healthy child who was raised for at least a third of her life by her father at home. He was a stay-at-home dad for the first year. She seems to be very, very well adjusted, which then begs the question as to then why would the guardian ad litem make recommendations in terms of restriction? What is it that is so objectionable about Mr. Ramone that we need this restriction? To be in the same room, perhaps, the mom and dad, and there was intervention with the police. I mean, it's pretty obvious that they cannot make good joint decisions. But the issue is, Your Honor, if the court is going to restrict Mr. Ramone's ability to make decisions for his child, the court needs to explain that. And the issue here is the way that the restriction has been built into the statute. If the restriction was not built into each one of these statutes and we were only looking at the best interest of the child standard, I would agree that the court could, based on all of those other factors, make a determination as to what is in the best interest of the child. But this restriction was pulled in here so that we don't have situations where just parents are stripped of rights to their children, rights to make decisions for their children, rights to be involved in the way that the statute suggests that they're supposed to be involved, which is to maximize the relationship between the parent and the child, the presumption that both parents are fit. So when you pull all of those rights, those things that the statute is saying, that we want these parents to be involved, we want them to be on equal footing, when you pull this away from a parent, that is in and of itself a restriction. And the court needs to say why, by a preponderance of the evidence, this person had engaged in conduct that endangered this minor child. And that is the thing that has been missing in this Court's judgment. You see no explanation as to why Mr. Ramone's time is restricted. Thank you, Counsel. I'll have an opportunity for rebuttal. Counsel for Appellate. Thank you, Your Honor. May it please the Court. For the audio record, my name is Curtis Blood, and I represent the appellee Jennifer Hendricks. We ask this Court to affirm the judgment of the Circuit Court of Madison County. Just a brief road map, and there's not a lot of parts to it, but still I like to give a little road map up front. Appellant's brief raised four points. I won't discuss the GAL issue, the fourth point at all, and rely on my brief for that. I will address the first two issues, the serious endangerment issues, together, so right now we're down to two points. Much better. But I'll add a third, as I want to talk about the fact that we don't have a trial transcript or a substitute for a trial transcript, no bystander's report either. So, three points in all. I will lead off with the lack of a trial transcript, and that's the biggest consideration in this case. There's no bystander's report either, so this Court can't see the evidence, can't even see a list of witnesses at trial, can't see if Mr. Amon made any objections, if he did what they were, can't see what other rulings he requested, well, can't see any rulings that the trial court made, we have no idea, just no clue. Therefore, this Court should make the following presumptions. Under the landmark Fouch v. O'Brien Supreme Court case, this Court should assume the evidence was sufficient and it supported the judgment in every way. In particular, this Court should assume that the judgment is sufficient, that the evidence is sufficient to support the judgment on the point that what the trial court decided was in the best interest of this child. This Court should presume that. And what is our standard of review? Well, it varies from issue to issue, but it's a very deferential standard on all of the issues you're on. There are some questions of law in this case. But actually, I went by it. I did the standard review on issue by issue. This Court should presume, though, that the trial court followed the law. And that's the Gulla v. Kavanaugh case that we cited in our brief. There's no affirmative showing to the contrary. This Court should presume. Because there's no transcript, this Court should presume that the trial court made the required presumptions. That follows from the statement in Gulla that the trial court is presumed to follow the law. Finally, this Court should presume that the appellant did not request any rulings of trial because the record doesn't show that the appellant made any requests of trial, since there's no trial transcript. Therefore, one of the Griffiths case, which we've cited as supplemental authority, a ruling pending, apparently, it's appellant's burden to show his objective if he wants to raise an issue here, and he can't do that. Mr. Ramone's briefs, principle and reply, don't even acknowledge these limitations caused by lack of a trial transcript. Those briefs argue repeatedly about sufficiency and admissibility of evidence and about rulings that he can't show were made. Those arguments are unsustainable, and that's virtually every argument that the appellant makes, and this Court should reject them summarily. And by that, I mean not on the merits. This Court can't evaluate the merits of any brief that's raised admissibility. That's the first point aside. I'd like to move on to the parental responsibility and parenting time issues, which I take together. And again, as appellant's counsel pointed out, the Court cannot restrict parental decision-making or parenting time without a finding of substantial endangerment. But Section 603.10 that sets forth that standard does not say that the Court must find serious endangerment to reduce parenting time or parental responsibility. It does say that if the Court does find substantial endangerment, then it can reduce parenting time. That's a decision-making responsibility. But the trial court, aside from the issue of endangerment or not, can always act in the best interest of the child, and there's no showing in this deficient record that the trial court did anything else, anything other than that. Now, as I read appellant's brief, the argument is that Mr. Ramone maintains reducing his parenting time and his parental responsibility from what was in the temporary agreed parenting plan amounted to restricting his parental rights, kind of squatter's rights. You get squatter's rights when you get the temporary order. And that would mean that once you've got that temporary agreed order, which, of course, it's agreed to. The trial court has not made a decision on best interests. That would mean that once that order is in place, the trial court can't change parental responsibility, parental decision-making or parenting time without a finding of substantial endangerment. That would mean that after the temporary order, best interest of the child is out of the equation. Is it substantial endangerment? Because if it's not, I can't do anything. I'm sorry, my hands are tied. Not the standard. But, I mean, it would be the same thing in this case if my client had had her parental decision-making or parental parenting time reduced from the temporary order. Would she then be entitled to come in and say, well, you can't do that. And it's not a matter of best interests. It's a matter of whether there was proof of substantial endangerment. And of course not. Of course not. Best interest of the child is at play in every case. And Section 602.5, which governs decision-making responsibility expressly, says the court shall allocate to one or both of the parents the significant decision-making responsibility for each significant issue. So the statute just flat-out says that it's not going to necessarily share responsibility. Well, that's two down and one to go. I'd like to turn to child support. Mr. Ramone's argument is that the trial court did not make findings. Did not make findings. Of course we don't have a trial transcript and we don't know what the trial court found at trial. Is a finding sufficient if it's made at trial? Is an oral finding sufficient? The answer is strongly suggested right in Section 505, the child support statute. Section 505A, subpart 3.4 requires the trial court to make, quote, written findings if child support deviates from the guidelines. Written findings. The whole clause is any deviation from the guidelines shall be accompanied by written findings by the court specifying the reasons for the deviations. Now, there's no claim here that child support deviates from the guidelines. That's not Appellant's argument. All I'm pointing out is the legislature knows how to tell a trial judge to make a written finding. And Section 505A, which is what Appellant is relying on in this case, does not require the trial court to make every finding in writing and doesn't require the trial court to make a written finding as to anything that's being argued in this appeal. So for all we know, and again, it should be presumed under GOA, the trial court made these findings at trial that are listed in the statute. There is also, by the way, a two-page proposed calculation worksheet, child support worksheet, in this record. And that was written by my client's trial counsel. It's quite detailed. It seems to make all the findings that one could hope for, follow the statute right through. And what happened in this case, the judgment strongly suggests that the trial court adopted it. Of course, we have no trial transcript. We don't know. I'm going to sit down now. I don't know what arguments this Court is about to hear, but I will be able to rebut them. If I could ask for a favor, I'd ask that you ask yourself if what you are about to hear is supported by this record. It's missing a trial transcript. I'd ask that you consider whether what you're about to hear is an appellant's brief, because otherwise you shouldn't be hearing it after I sit down. Rule 341H7 points in the principal brief, not argued or waived, not to be raised in oral arguments. And finally, I hope that you'll consider what I would say if I had a chance for serevanna, which I don't. Please affirm the judgment. Thank you.  Rebut. Thank you, Your Honors. I'd like to address, obviously, the child support argument initially. The statute actually says, you know, the Court shall compute the basic child support by taking the following steps. The Court has to determine each parent's monthly net income, add them together to determine the combined net monthly income, calculate each parent's percentage of that. When determining at an evidentiary hearing, the Court has to determine the individualized tax amount on the basis of the record. None of those findings are in the trial court's judgment. And also, there isn't anything in the record that suggests that there is an error here. You don't have a record. But the issue is if there's no way to determine, if the Court didn't make these specific findings. As an example, one of the things that the Court didn't do was find, make a finding as to what Ms. Hendricks or Jennifer's net income was. There were no findings to that effect. And those are the things that are wrong. But isn't it under FOUCH that the Court knows the law and applies the evidence that supported the Court's order? Except when the statute requires the Court to make specific findings. When the statute requires the Court to make specific findings or articulate specific findings, it is the duty of the Court to make those findings and articulate them in her order. So your position is that the Court has to put down how it calculated them? Yes. Yes, Your Honor. Yes. That is the argument. And that is what the statute says. I mean, additionally. I'm sorry, Your Honor. So it's a show-your-homework argument? In a sense, yes. And that's the way the new statutes are written. There were additional findings. And that was part of the revamp of the 2016, you know, IMDMA and the 2015 Illinois Parentage Act amendments was to add some of these requirements for the Court to make specific findings in certain instances. When you don't award any type of parental decision-making, if you're restricting a parent's time or you're restricting their decision-making, you have to make some specific findings based on a preponderance of the evidence. Same with the child support issue. Also, in terms of the child support issue, making a finding or ordering that Mr. Ramone would be attributed a certain income, there were specific findings by case law that the judge needed to make in that case in order to make a finding that he should be attributed a certain level of income. Wasn't the income based on what his W-2 showed the year before? Are you saying that that was inappropriate to consider? It's not clear as to what the – because we don't have – Because he didn't produce anything else, correct? We don't know. We don't know from the record, but – We don't know anything from the record. We don't. And it is frustrating. Well, wait. You keep saying it's frustrating. I would refer you to 322C where it sets out how you're supposed to proceed if parties can't agree to a bystander's report. You're supposed to then send your proposed report to the court and then – and the party, and the party gets a period of time to respond. If they don't respond or they do respond with a different report, as they're understanding are amendments, and you can't agree upon those, then you go to the court and you may have to have a hearing. And the court then decides what the bystander's report is. And then it certifies it. And then – And then it comes to us. I would say to your Honors that we filed a motion with respect to this bystander's report in advance of us preparing our briefs in that we could not get our hearing. We did not get our hearing to make the – to fix the issues or the discrepancies in the bystander's report. So you're saying the court refused to give you a hearing? That is correct, Your Honor. And what have you done about that? We filed a motion here with the court seeking this court's assistance in securing the cooperation of both the opposing counsel and the trial court. Well, we have no ability, and you have – the court below has no ability to make the other party cooperate with respect to a bystander's report. All you can do is – and I do recall what you're talking about, but you were asking us to make them cooperate with you. That's not what the statute requires. Or to order that we at least have a hearing, be able to have that hearing to deal with the issue of how do we reconcile the discrepancies or what a disagreement is about the report itself. Well, I again refer you to the section because if you – I mean, these parties couldn't agree to anything. And so they weren't going to agree to a bystander's report either. So your only recourse was to actually ask the circuit court for a hearing to decide that issue, not to get the parties to agree or cooperate, but to decide the issue. And that's how you get a certified report before us. Otherwise, we are really left in the dark, and we had to rely almost entirely on the GAL's report and what other things we found in the record, mostly the GAL's report and the court's order. And we are to presume then, based on that, that the court did follow the law. Except in those instances where the law requires the court to make specific findings. And that – I will let our arguments rest on our briefs. Thank you, Your Honor. Thank you. Thank you, counsel. The court will take the matter under advisement and issue this decision in due course.